433 So.2d 574 (1983)
TOWN OF LONGBOAT KEY, Florida, Appellant,
v.
LANDS END, LTD., Appellee.
No. 82-1595.
District Court of Appeal of Florida, Second District.
May 25, 1983.
Rehearing Denied June 30, 1983.
*575 Scott R. Christiansen of Christiansen, Dehner & Dart, P.A., Sarasota, Nancy E. Stroud of Ross, Hardies, O'Keefe, Babcock & Parsons, Boca Raton, and Fred P. Bosselman and Edward F. Ryan of Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for appellant.
M. Joseph Lieb, Jr. and Jimmy Syprett of Syprett, Meshad, Resnick & Lieb, P.A., Sarasota, for appellee.
CAMPBELL, Acting Chief Judge.
In January, 1981, appellant, the Town of Longboat Key, formally adopted Ordinance No. 80-9. The ordinance requires developers to deed land or pay a fee to appellant before receiving any permits "following approval of final development plans... ." The ordinance, through use of a formula, determines how much land must be dedicated or how large the assessed fee will be. The stated purpose for this ordinance is to insure that, as future land development in Longboat Key proceeds, there will either be preserved therein land for parks and open spaces or that there will be sufficient fees assessed to permit acquisition of land for such purposes. The use of the fees collected is explained in section 6 of the ordinance as follows:
The fees collected hereunder ... shall be placed in a reserve account within the General Fund... . Monies within the Reserve account shall be used and expended solely for the acquisition, improvement, expansion of Town Parks, open space land and land for specified Town purposes and facilities required as capital improvements of the Town of Longboat Key.
Appellee, Lands End, Ltd., a developer, paid a fee under protest and pursuant to the ordinance and then filed this declaratory judgment action seeking a determination that Ordinance No. 80-9 was unconstitutional. The circuit court so found, stating that the ordinance in effect levied an invalid tax. The court reached this conclusion because the fees collected under the ordinance
are not restricted solely for the purpose of acquiring open space and park land. In theory, at least, the funds could be used for "other specified TOWN purposes" which could include the building of capital improvements and things totally unrelated to the Ordinances regarding acquisition of open space and parks. Without a specific restriction as to the use of funds, the Ordinances constitute invalid taxation.
The court also denied appellant's suggestion that it should apply Ordinance No. 81-27 instead of Ordinance No. 80-9, since 81-27 was adopted subsequent to the filing of the suit but prior to the final hearing in this *576 matter. Appellant then filed this appeal, and we now affirm in part and reverse in part.
Very recently, one of our sister courts considered a question similar to the one presented here. In Hollywood, Inc. v. Broward County, 431 So.2d 606, (Fla. 4th DCA 1983), the court sustained an ordinance that required developers to dedicate land or pay a fee as a condition of plat approval. The court stated that such exactions for county level parks "are permissible so long as ... the exactions are shown to offset, but not exceed, reasonable needs sufficiently attributable to the new subdivision residents and ... the funds collected are adequately earmarked for the acquisition of capital assets that will sufficiently benefit those new residents." Hollywood, Inc., 431 So.2d at 614.
Applying that test to Ordinance No. 80-9, we find that there is a lack of clear and adequate restrictions on the use of the fees collected. In Hollywood, the ordinance made it clear that the fees collected could only be used to develop additional county level parks, the need for which would become apparent as additional development occurred. Here, by contrast, the fees collected are earmarked to include "other specified Town purposes and facilities required as capital improvements... ." Thus, as the trial court correctly noted, there is no real guarantee that the funds collected will actually be used to promote the development and acquisition of open space and park land, the need for which is generated by the new development. Because of this infirmity, the trial court correctly found that Ordinance No. 80-9 levied an invalid tax and was, therefore, unconstitutional.
However, although the trial court was correct in recognizing the infirmity in Ordinance No. 80-9, it should have applied the successor Ordinance No. 81-27. This ordinance was enacted after the instant suit was filed but before final hearing in this matter, and it should have been considered as the operative ordinance when the trial judge made his decision. City of Dunedin v. Contractors & Builders Association, 358 So.2d 846 (Fla. 2d DCA 1978).
Furthermore, Heinzman v. U.S. Home of Florida, 317 So.2d 838 (Fla. 2d DCA 1975), is distinguishable from the instant case. There, the court did not apply an ordinance passed after a contract for sanitary sewer service was entered into by Florida Cities Water Company and two subdivision areas, because to do so would interfere with those parties' contractual rights. That situation is not present here.
Even though we hold that the trial court should have applied the successor ordinance, we also feel constrained to point out that there may well be infirmities in that new ordinance that also renders it invalid. This is so because the new ordinance requires that five acres of land or an equivalent amount of money per 1,000 residents be set aside for parks and open space purposes. The reason for our concern stems from the fact that in Ordinance No. 80-9, two and one-half acres or an equivalent amount of money per 1,000 residents was required to be set aside, while an additional two and one-half acres or equivalent money per 1,000 residents was to be set aside for "specified town purposes under this ordinance." This makes it appear that the new ordinance simply combines the two previous two and one-half acres per 1,000 residents requirements into one five acre per 1,000 resident requirement. Thus, it is unclear whether there is a proper nexus between the new land amount requirements and the stated residential population requirements.
On remand, therefore, the trial court should conduct a hearing and take testimony and evidence concerning the effect and operation of Ordinance No. 81-27. This examination should include, but not be limited to, scrutiny of that portion of the ordinance which establishes the land and fee requirements in order to determine whether a proper nexus exists between the amount of land or money to be set aside and the stated residential population requirements.
Because of our disposition of this appeal, it is unnecessary to consider appellant's third point on appeal. Therefore, we affirm *577 in part, reverse in part, and remand for proceedings consistent herewith.
SCHOONOVER and LEHAN, JJ., concur.